## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RANDY DELGADO

Case No. 20-CR-542

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Defendant has asked this Court to reconsider its prior decision denying his motion to dismiss the indictment on Second Amendment grounds. *See* [58]. For the reasons explained below, the Court declines to reconsider its decision, and thus denies the reconsideration request, [58].

## I.    Factual Background

On September 8, 2020, a grand jury indicted Defendant Randy Delgado, who had previously been convicted of a felony, for unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] [13]. On December 14, 2020, he moved to dismiss the indictment on Second Amendment grounds, arguing that § 922(g)(1) is unconstitutional as applied to the "highly unusual facts of this case"—that is, where he has a single felony conviction from 2006, more than a decade ago, for "simple possession of 500 grams of a substance containing cannabis" and received a

---

[1] For purposes of deciding Defendant's motion, this Court assumes that the indictment's factual allegations are true and views "all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *see also* Fed. R. Crim. P. 12(b)(1) (a defendant "may raise by pre-trial motion any defense, objection, or request that the court can determine without a trial on the merits").

probationary, non-custodial sentence, [28]. The Court denied the motion on September 23, 2021, [38], and Delgado pled guilty to the charged offense on April 21, 2022. *See* [47], [48]. The Court then set the matter for sentencing on September 30, 2022, [57].

After the Court accepted Mr. Delgado's guilty plea but before sentencing, on June 23, 2022, the United States Supreme Court decided *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). Thereafter, Mr. Delgado asked this Court to continue the sentencing and reconsider its decision on his prior motion to dismiss, *see* [58]. The Government opposed the motion, and the parties fully briefed the relevant issues, including the impact of *Bruen* on the Court's prior ruling.

After full consideration of the parties' briefs and arguments, the Court declines to reconsider its prior ruling and thus denies Mr. Delgado's motion [58].

## II. Discussion & Analysis

The Second Amendment provides that, a "well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Yet, § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Courts, including the Supreme Court, have long upheld statutory restrictions, like 18 U.S.C. § 922(g), on the possession of firearms by

convicted felons. Mr. Delgado, like many other defendants recently, argues that *Bruen* changed the landscape and now makes such restrictions unconstitutional. *See* [61].

Nevertheless, both the Supreme Court and the Seventh Circuit have held that *Bruen* does not disturb the Supreme Court's prior decisions in *District of Columbia v. Heller*, 554 U.S. 570, (2008) and *McDonald v. Chicago*, 561 U.S. 742, 786 (2010), affirming longstanding prohibitions on the possession of firearms by felons. *See United States v. Rahimi*, 602 U.S. 680, 699 (2024); *United States v. Gay*, 98 F.4th 832, 846 (7th Cir. 2024). Indeed, in deciding *Bruen*, several justices explicitly affirmed this limitation. *See Bruen,* 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80–81 (Kavanaugh, J., joined by the Chief Justice, concurring) (endorsing statement in *Heller* about the propriety of "longstanding prohibitions on the possession of firearms by felons")*; see also id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (agreeing with Justice Kavanaugh that Court's decision in *Bruen* casts "no doubt" on *Heller*'s prohibition of firearms possession by felons).

Moreover, the Court in *Bruen* did not mention § 922(g)(1), or any other criminal statute, let alone invalidate it. Rather, *Bruen* considered only the applicable framework for assessing challenges to firearm regulations under the Second

Amendment, rejecting the "two-part approach" that had been developed by some federal courts of appeals in evaluating such challenges in favor of one that "centers on the constitutional text and history." 597 U.S. at 19–25. Even under the historical text approach set out in *Bruen*, however, the Court's prior decision remains sound, and otherwise follows controlling precedent, as explained below.

### A.     Controlling Case Law Confirms § 922(g)(1)'s Constitutionality

Binding precedent forecloses any facial invalidation of § 922(g)(1) under the Second Amendment.[2] As the Seventh Circuit held in *United States v. Gay*, such an "argument is hard to square with *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)," which affirmed "that the Second Amendment creates personal rights" and "pointedly stated that 'longstanding prohibitions on the possession of firearms by felons' are valid." 98 F.4th 843 (7th Cir. 2024). In fact, in *McDonald v. Chicago*, the Supreme Court again reassured readers that all of the reservations and provisos in *Heller*, including the "prohibitions on the possession of firearms by felons," remain valid. 561 U.S. 742, 786 (2010) (plurality opinion). If any doubt remained about *Heller*'s endorsement of § 922(g)(1)'s constitutionality post-*Bruen*, the Seventh Circuit resolved such uncertainty in *Gay*.

---

[2] As part of today's ruling, this Court assumes, for the sake of the motion, that convicted felons constitute part of the "people" under the plain text of the Second Amendment. *See United States v. Phillips*, No. 1:22-CR-00596, 2023 WL 9001124, at *6 (N.D. Ill. Dec. 28, 2023) (The "plain text of the Second Amendment" provides "no reason to think that the word 'people' does not cover, on its face, all persons—including a person convicted of a felony."); *United States v. Duarte*, No. 22-50048, 2025 WL 1352411, at *8 (9th Cir. May 9, 2025) ("Duarte's status as a felon does not remove him from the ambit of the Second Amendment; he is one of 'the people' who enjoys Second Amendment rights.").

In the absence of any definitive invalidation of § 922(g)(1) by the Supreme Court itself, the *Bruen* opinion (without more) fails to undermine the constitutionality of the statute. *See Bruen*, 597 U.S. at 72 ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns.") (Alito, J., concurring); *id.* at 80–81 (endorsing the statement in *Heller* about the propriety of denying firearms to felons) (Kavanaugh, J., joined by the Chief Justice, concurring).

Indeed, in *United States v. Rahimi*, the Supreme Court again endorsed the presumptive constitutionality of a blanket prohibition on felons possessing firearms. 602 U.S. 680, 699 (2024) ("*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"). As numerous courts have observed, *Rahimi* reinforces the conclusion that § 922(g)(1) remains consistent with the Second Amendment. *See, e.g., United States v. Castillo,* No. 23 CR 113, 2025 WL 92565, at *4 (N.D. Ill. Jan. 14, 2025) ("The *Gay* Court wrote that the Supreme Court 'pointedly stated that longstanding prohibitions on the possession of firearms by felons are valid.' *Rahimi* made the same point."); *United States v. Young*, No. 23-10464, 2024 WL 3466607, at *9 (11th Cir. July 19, 2024), *cert. denied sub nom. Young v. United States*, 145 S. Ct. 1097 (2025) (observing that in *Rahimi*,

the Court once again declared that the prohibition on the possession of firearms by felons remains "presumptively lawful"); *United States v. Philpot*, No. 23-3368, 2024 WL 3429177, at *7 n.2 (6th Cir. July 16, 2024) (observing that, in *Rahimi*, the Supreme Court endorsed § 922(g)'s constitutionality). Further bolstering the notion that § 922(g)(1) remains constitutional post-*Bruen*, the Supreme Court also vacated the Third Circuit's decision in *Range v. Att'y Gen. United States of Am.,* 69 F.4th 96 (3d Cir. 2023), which found § 922(g)(1) unconstitutional as applied to a defendant whose criminal record included just a decades-old non-violent offense, and remanded the matter for further consideration in light of *Rahimi*. *See Garland v. Range*, 144 S.Ct. 2706 (2024).

In short*,* as *Rahimi* and *Gay* and numerous other cases make clear, *Bruen* merely alters the relevant test for determining the scope of the Second Amendment but leaves intact prior case law upholding the constitutionality of § 922(g)(1). *See Gay,* 98 F.4th 843; *Rahimi*, 602 U.S. at 699.[3]

## B.    Historical Analysis Confirms § 922(g)(1)'s Constitutionality

Prior to *Gay*, the Seventh Circuit declined to rule on the constitutionality of § 922(g)(1) under the *Bruen* standard, pending a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" by the district court. *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023); *see also United States v. Jones*, No. 23-2459, 2024

---

[3] Just last month, the Seventh Circuit upheld the validity of another section of the challenged statute, § 922(k), confirming that *Bruen* altered the analysis but did not mandate a blanket prohibition on the regulation of firearms. *United States v. Reyna*, No. 23-1231, 2026 WL 221850, at *7 (7th Cir. Jan. 28, 2026) (finding that the statute, which punishes the knowing possession of deserialized firearms, remains consistent with the historical tradition of firearm regulation).

WL 1427024, at *2 (7th Cir. Apr. 3, 2024) (acknowledging that "the historical assessment on the constitutionality" of § 922(g)(1) under *Bruen* remained "inconclusive" after *Atkinson).* Given *Gay*'s more recent (and binding) analysis of Supreme Court precedent, however, an additional review of the historical evidence by this Court now appears unnecessary in this case.

Nevertheless, to the degree a historical analysis by this Court may be necessary even in a post-*Gay* world, this Court finds that the Government has presented historical evidence (not factually disputed by the parties) and carried its burden of answering the questions presented by *Atkinson*.[4] *See* [64] at 12–23. Based upon the record here, this Court adopts the well-reasoned historical review and legal analysis of Circuit Court Judge Wood in her dissent in *Atkinson*, 70 F.4th at 1025 (7th Cir. 2023) ("My own assessment of the materials that now govern Second Amendment questions per *Bruen* convinces me that the categorical prohibition created by section 922(g)(1) passes muster under the Constitution.").[5]

---

[4] In *Atkinson*, the Seventh Circuit listed five questions to "help focus the proper analysis" in determining whether the statute is "consistent with this Nation's historical tradition of firearm regulation" under *Bruen*. 70 F.4th at 1020, 1024–25. Nonetheless, it acknowledged that any trial court's historical analysis would "no doubt yield some measure of indeterminacy" and that, prior to receiving additional Supreme Court guidance, the courts would "have to give the best answer available" on whether the Government met its historical-tradition burden. *Id.* at 1024. The Government has done so here, and given the absence of factual disputes by the parties, no evidentiary hearing was requested or required. *United States v. Agee*, No. 21-CR-00350-1, 2023 WL 6443924, at *6–7 (N.D. Ill. Oct. 3, 2023) ("Put another way, by not otherwise refuting the particular laws, treatises, or academic articles," the defendant "implicitly accepts that the government has presented them accurately" and thus "no evidentiary hearing is needed in this particular case" where a defendant "mounts no counterattack on the accuracy of the sources.").

[5] Likewise, this Court incorporates by reference both the historical review and interpretation of Supreme Court precedent that has arisen from other persuasive authorities, each upholding the constitutionality of § 922(g)(1). *See, e.g., United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as

Mr. Delgado's as-applied challenge to § 922(g)(1) also fails. Initially, such a challenge fails at the outset because the historical evidence obviates the need for any case-by-case examination of as-applied challenges to the statute. *See, e.g., United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) ("Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."); *see also Atkinson*, 70 F.4th at 1027 (Wood, J., dissenting) (suggesting that enabling individuals to seek to establish a case-specific exemption from a generally applicable criminal law would create "an arbitrary patchwork of decisions—as far from the rule of law as one could image"); *see also United States v. Phillips*, No. 22-CR-00596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) ("Lastly, to the extent Phillips challenges the felon dispossession statute, as applied to him, that challenge fails. Like the

---

restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson."); *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("The longstanding prohibition on possession of firearms by felons is constitutional, and the district court properly denied the motion to dismiss."); *United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("Nothing in the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), reflects a retreat from the Court's earlier statement in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that 'longstanding prohibitions on the possession of firearms by felons and the mentally ill' are 'presumptively lawful.'"); *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) ("Though *Bruen* created a new test for determining the scope of the Second Amendment, the Court didn't appear to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons. If anything, *Bruen* contains two potential signs of support for these prohibitions."); *United States v. Dubois*, 94 F.4th 1284, 1292–93 (11th Cir. 2024) ("The Supreme Court left no doubt that it viewed its decision as a faithful application of *Heller*, not a departure from it," confirming "that *Heller* correctly 'relied on the historical understanding of the Amendment to demark the limits on the exercise of that right.'"); *United States v. Phillips*, No. 1:22-CR-00596, 2023 WL 9001124, at *14 (N.D. Ill. Dec. 28, 2023) (The "historical analogues provided by the government support a legislative authority to disarm persons convicted of felonies, regardless of whether the conviction involved a use (or attempted use) of force").

defendant in *Atkinson*, Phillips fails to provide 'much historical basis for individualized assessments' or carveouts between 'individuals who committed violent versus non-violent crimes' for § 922(g)(1) purposes.") (citing *Atkinson*, 70 F.4th at 1023); *United States v. Duarte*, 137 F.4th 743, 761 (9th Cir. 2025) ("our historical tradition of categorically disarming those whom the legislature determines to represent a 'special danger of misuse' also supports the application of § 922(g)(1) to felons, like Duarte, who assert that their felonies were non-violent"); *Id.* ("History does not require 'felony-by-felony litigation' to support the application of § 922(g)(1) to all felons.") (citing *Atkinson*, 70 F.4th at 1038 (Wood, J., dissenting)).

Thus, while the Government "bears the burden of proving the constitutionality" of § 922(g)(1), *Bruen*, 597 U.S. at 24 (quoting *United States v. Playboy Entertainment Grp., Inc.*, 529 U.S. 803, 816 (2000)), it can meet its burden, based upon this historical evidence, without delving into the individualized assessment Defendant requests. *See, e.g., United States v. Young*, No. 2:22-CR-20 JD, 2023 WL 8697936, at *2–3 (N.D. Ind. Dec. 15, 2023) (The "historical record shows strong support for the ability to categorically prohibit a defined group from possessing arms based on the legislature's assessment the group was dangerous or untrustworthy, without individual dangerousness assessments of group members."); *United States v. Barwicks*, No. 20-CR-00563, 2024 WL 1521473, at *13–14 (N.D. Ill. Apr. 8, 2024) (same); *United States v. Castillo*, No. 23 CR 113, 2025 WL 92565, at *6 (N.D. Ill. Jan. 14, 2025) (rejecting the defendant's as-applied challenge to § 922(g)(1) because the Seventh Circuit has never upheld an as-applied Second Amendment

challenge to § 922(g)(1); the defendant offered no "support for his proposition that the statute's constitutionality turns on individualized assessments"; and "the historical evidence points to an opposite conclusion—laws in American colonies and 17th-century England suggest that felons, both violent and non-violent, were targeted for firearm dispossession."). Thus, neither the Supreme Court nor the Seventh Circuit has endorsed the individualized assessment Mr. Delgado seeks.[6]

To be clear, the Seventh Circuit has not yet definitively ruled upon the issue,[7] but several Circuit Courts have, in fact, rejected the notion that convicted felons whose predicate offenses were "non-violent" remain constitutionally exempt from § 922(g)(1)'s blanket ban on felons possessing firearms. In *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024), the Fourth Circuit identified a historical tradition of regulating gun possession by non-violent criminal offenders because "colonial-era offenders who committed non-violent hunting offenses were ordered to forfeit their

---

[6] In her dissent in *Kanter v. Barr*, then Circuit Judge Barrett observed that § 922(g)(1) "would stand on solid footing if their categorical bans were tailored to serve the governments' undeniably compelling interest in protecting the public from gun violence. But their dispossession of all felons—both violent and nonviolent—is unconstitutional as applied to Kanter, who was convicted of mail fraud for falsely representing that his company's therapeutic shoe inserts were Medicare-approved and billing Medicare accordingly." 919 F.3d 437, 451 (7th Cir. 2019), *abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). But the majority rejected that principle, observing that there "may be a case in the future that requires addressing whether any individual may successfully bring an as-applied challenge to the statute, but Kanter's is not that case." *Id.* at 450 n.12.

[7] In *United States v. Carbajal-Flores*, 143 F.4th 877, 889 (7th Cir. 2025), the Seventh Circuit held that "district courts need not conduct individualized assessments of illegal aliens for purposes of § 922(g)(5)(A)" but expressed "no views on whether criminal defendants may lodge as-applied challenges to other provisions contained in § 922(g)'s various subsections." Although the court observed that "the class of persons disarmed under § 922(g)(1) is potentially overinclusive," i*d.* at *9, it neither conducted an historical review, nor provided any analysis on that question because the plaintiff in that case brought facial and as-applied challenges to § 922(g)(5)(A) (which the court wholly rejected). *Carbajal-Flores* thus merely identified, without resolving, the question Delgado raises, and this Court remains convinced by the weight of circuit authority, discussed below, affirming the validity of § 922(g)(1)'s application to "non-violent" felons based upon long-standing regulatory practice in American law.

firearms," and colonial governments disarmed individuals for non-violent offenses such as refusing to participate in the Church of England or refusing to declare an oath of loyalty. *Id.* at 705–706. In fact, the Fourth Circuit held that, in that Circuit, a person convicted of *any* felony "cannot make out a successful as-applied challenge to § 922(g)(1) unless the felony is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." *Id.* at 700.

Similarly, the Eighth Circuit has determined that "history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society," and thus held that, even post-*Bruen* and *Rahimi*, "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 110 F.4th 1120, 1125, 1128 (8th Cir. 2024); *see also United States v. Peck*, 131 F.4th 629, 632 (8th Cir. 2025) (same).

As part of a growing consensus, the Tenth Circuit has likewise held that, post-*Bruen* and *Rahimi*, § 922(g) remains constitutional, whether as applied to felons who committed violent crimes or to felons who committed non-violent crimes. In *United States v. Warner*, 131 F.4th 1137 (10th Cir. 2025), the defendant argued that the Second Amendment prohibits the application of § 922(g)(1) to non-violent felons like himself, because non-violent felons are not dangerous and therefore retain the same right to keep and bear arms as do non-felons. Specifically, Warner (like Mr. Delgado here) emphasized that his felonies, non-violent to begin with, were also decades old and did not subject him to a term of imprisonment (he also argued, unlike Mr.

Delgado), that his felonies would today be treated only as a misdemeanor under state law). *Id.* at 1147. The Tenth Circuit rejected the challenge, holding that, despite "the shifting Second Amendment landscape," § 922(g)(1) remains "constitutional as applied to non-violent felons." *Id.* at 1148–49. *See also Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025) (even post-*Bruen* and *Rahimi*, "the Second Amendment doesn't prevent application of § 922(g)(1) to nonviolent offenders. . . .").

The Ninth Circuit recently joined these courts, holding, in *United States v. Duarte*, that "§ 922(g)(1) is not unconstitutional as applied to non-violent felons." 137 F.4th at 750, 762. In the absence of binding authority to the contrary, this Court finds these cases persuasive.

Moreover, even if an as-applied challenge remains viable for some categories of felons, *Gay*, 98 F.4th 843, the record in this case demonstrates that Defendant would still fall outside any such category.[8] Mr. Delgado's criminal history is far from minor: he pled guilty to manufacturing/delivering cannabis in 1999; he was charged several times with drug possession between 2001 and 2003; and he was charged with and pled guilty to felony drug possession in 2006. In connection with this last matter, he failed to show up for court and thereafter violated the terms of his probation. He then pled guilty to criminal damage to property, obstructing justice, and several traffic related offenses. Finally, in 2020, he was charged with unlawful possession of

---

[8] In dicta, the *Gay* court suggested that, even if convicted felons *could* assert a non-frivolous as-applied challenge, any such challenge mounted by Gay would fail because he was, by no means, a "law-abiding, responsible citizen," having been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison. 98 F.4th 843.

a weapon and defacing ID marks on a firearm. *See* [8]. In connection with this last matter, which forms the basis for this case, Defendant was arrested August 21, 2020, after police found him sitting in a double-parked car, in possession of alcohol and a loaded Ruger LCP .380 caliber firearm with an obliterated serial number. *See* [50] at 4–5. According to the PSR, Delgado admitted that he had previously been convicted of a felony and admitted that he had purchased the gun a few years ago, despite knowing that the law prohibited him from possessing a firearm; he also represented that he had planned to unlawfully sell the gun with the obliterated serial number to another individual, a known gang member. *Id.* at 5.

Delgado was released on bond on August 24, 2020, *see* [2], [3], and then indicted on September 8, 2020. *See* [12], [13]. On September 17, less than a month after being released on bond and less than two weeks after being indicted, Defendant was again arrested for driving under the influence, driving on a suspended license, and stopping on a roadway, *see* [22]. The PSR confirms that, in addition to his felony conviction, between August 2003 and December 2015, Delgado "was cited by various Cook County, Illinois law enforcement agencies for seat belt violations (two citations), disregarding a stop sign (three citations), failure to yield to the right of way, improper turning, speeding (two citations), and failure to notify the Secretary of State of an address change. He was also cited for a seat belt violation in DuPage County, Illinois in October 2001, and for a speeding infraction in DuPage County, Illinois in May 2020." [50] at 9–10. Although these citations remain relatively non-serious, they demonstrate Mr. Delgado's long term "disrespect for legal norms of society." *Peck*,

131 F.4th at 632; *Jackson*, 110 F.4th at 1127; *Hunt*, 123 F.4th at 706. Among other things, Defendant's arrest for new offenses while on pre-trial release in this case further confirms that his systemic disrespect for societal norms continues to date.

In short, the record here, like in *Gay*, shows that Mr. Delgado "is not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." *Gay*, 98 F.4th 843. *See also Bruen*, 597 U.S. at 38–39 n.9 (affirming the presumptive constitutionality of shall-issue licensing regimes that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'") (quoting *Heller*, 554 U.S. at 635); *United States v. Dial*, No. 24-10732, 2024 WL 5103431, at *2 (11th Cir. Dec. 13, 2024) ("Even in *Bruen* the Supreme Court continued to describe the right to bear arms as extending only to 'law-abiding, responsible citizens'" and "*Rahimi* . . . does not change our analysis."). Thus, even if an as-applied challenge remains viable, it fails in this case on its merits.[9]

## III.  <u>Conclusion</u>

The constitutional rights of lawful gun owners remain protected from government overreach by the Second Amendment. But such cherished protections do not prevent legislatures from placing reasonable restrictions upon the possession of firearms by convicted felons, consistent with controlling prior precedent and the Nation's history and tradition regarding such regulations. Because § 922(g)(1)

---

[9] In making his as-applied challenge, Defendant also emphasizes that his felony conviction did not result in a custodial sentence. But that argument ignores the plain language of the statute, which states, "It shall be unlawful for any person--(1) who has been convicted in any court of, a crime *punishable by* imprisonment for a term exceeding one year . . .", not *punished by*. 18 U.S.C. § 922(g)(1) (emphasis added). It also ignores binding precedent. *See Hatfield v. Barr*, 925 F.3d 950, 952 (7th Cir. 2019) (holding that "§ 922(g)(1) may be applied to a felon convicted of fraud, whose maximum sentence exceeded a year, even if the actual punishment was less.").

14

remains constitutional, both on its face and as applied to Defendant, the Court declines to reconsider its prior denial of Defendant's motion to dismiss the indictment and denies Defendant's motion [58].

Dated: February 6, 2026

Entered:

John Robert Blakey
United States District Judge